No. 12572

IN THE SUPREME COURT OF THE STATE OF MONTANA

1974

---

STATE OF MONTANA,

                     Plaintiff and Respondent,

-vs-

JAMES BURTCHETT,

                     Defendant and Appellant.

---

Appeal from: District Court of the Twelfth Judicial District,
           Honorable B. W. Thomas, Judge presiding.

Counsel of Record:

    For Appellant:

        Morrison, Ettien and Barron, Havre, Montana
        J. Chan Ettien argued, Havre, Montana

    For Respondent:

        Hon. Robert L. Woodahl, Attorney General, Helena,
        Montana
        J. Michael Young, Assistant Attorney General, argued,
        Helena, Montana
        Ronald W. Smith, County Attorney, argued, Havre, Montana

---

                    Submitted: June 12, 1974

                    Decided: SEP 13 1974

Filed: SEP 13 1974

*Thomas J. Kearney*
                              Clerk

Honorable Robert Keller, District Judge, sitting in place of Mr. Chief Justice James T. Harrison, delivered the Opinion of the Court.

Appellant, defendant below, was convicted of the crime of arson in the first degree and arson with intent to defraud an insurer, by jury, in the district court of the twelfth judicial district of the State of Montana, in and for the County of Hill, before the Honorable Bernard W. Thomas.

Appellant's residence, located six miles south of Havre, Montana, was substantially destroyed by fire on the night of May 14, 1971. The Havre city fire marshal, Richard D. Habeger, who was also a special deputy state fire marshal, inspected the premises on May 15, 1971, took several pictures, but was unable to make a determination as to the cause of the fire. The State Fire Marshal's Office, at the instigation of the appellant's fire insurance company, called Habeger and requested that he go back to the premises for a more detailed inspection. Habeger returned on May 21, 1971, took 15 or 20 photographs and collected samples from seven different holes burned in the floor. Samples from one of the burned holes, adjacent to the floor furnace, were placed in a two pound coffee can, ultimately admitted into evidence as exhibit D; samples from six other holes, further removed from the floor furnace, were placed into another two pound coffee can, and ultimately marked as exhibit E, but refused admission into evidence at the trial. Habeger mailed both exhibits to the alcohol, tobacco and firearms laboratory in Washington, D.C., for examination and report on May 24, 1971. He did not receive an immediate reply.

In August, 1971, appellant encountered Habeger at the Hill County Fair and asked if there had been any results from the investigation. Habeger replied in the negative. In March, 1972, appellant settled his claim with his insurance company,

decided to tear down what was left of the residence, and then rebuild. Finding no one to tear down the building, appellant decided to burn down the remainder of the building. He cleared the burning with the City of Havre fire department and with Hill County, but not specifically with Habeger, and in late May 1972, burned down the remainder of the building.

The samples had been received by the alcohol, tobacco and firearms laboratory in Washington, D. C., tested on June 16, 1971, and the results, showing the presence of accelerants, mailed back to Habeger. Unfortunately, at the time the results were returned, the Havre city fire department was moving its residence and Habeger was on vacation. The letter with the results was deposited with some junk mail in a cubbyhole in a desk in the new firehall where it lay unnoticed until late September, 1972, some 15 months later, when Habeger was looking for some material for Fire Prevention Week. He immediately turned all the results of this investigation over to the county attorney for Hill County and this prosecution followed.

Appellant's contentions are as follows:

1. That the court erred in refusing to dismiss the charges on the grounds of prejudicial delay;

2. That the court erred in admitting Exhibit D;

3. That the court erred in admitting the evidence from the forensic laboratory.

Addressing appellant's first contention, there is no question but that a delay in time between the commission of an offense and the commencement of the prosecution, by the filing of an information termed "preindictment delay" can be the denial of due process. United States v. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L Ed 2d 468. Mere delay, in and of itself, is not sufficient. There must be either actual prejudice to the conduct of the defense,

or that the State intentionally delayed to gain some tactical advantage over appellant, or to harass him.  United States v. Marion, supra.

In the instant case, appellant concedes in his brief that mere delay is not prejudicial in itself and that the delay in this instance was neither intentional nor purposeful.  He does contend, however, that by the time he was put on notice he was the subject of criminal action, the physical evidence had been destroyed, and he was substantially prejudiced thereby.

At a pretrial suppression hearing and at the trial, appellant called as a witness a chemist from Northern Montana College who testified that by the use of a gas chromatograph he could determine whether or not samples from other portions of the floor contained the same components that chemists in the alcohol, tobacco and firearms laboratory in Washington, D. C., found in the sample taken from the holes that had burned through the floor of the house.  Evidence had been introduced by appellant that a considerable amount of kerosene smoke had been permitted to collect on the underside of the floor (from thawing frozen pipes in the cellar on a number of occasions), and that there was inlaid linoleum on the floor of the house, held in place by either asphalt or some other petroleum-based compound.  Appellant's chemist testified that either, or both of these conditions could have given rise to a finding by the State's chemist that there were accelerants present.  He would have ground up samples from the floor, placed them in an oven under heat, and analyzed the gases.

The chemist from the alcohol, tobacco and firearms laboratory used gas chromatography but with a different approach.  When the samples were first collected by the deputy state fire marshal and placed in coffee cans, plastic lids were placed over the cans and then taped into place.  When the government chemists received

these cans they inserted a syringe through the plastic lid in-
to the can, withdrew the vapors then existent, and used the
gas chromatograph upon the vapors. They found gasoline or naptha
present in both cans. These were defined as accelerants, highly
volatile, and with an exceptionally low flash point. They fur-
ther testified that if a volatile petroleum distillate had been
placed upon wood, and then stored in the open, it would not only
gradually evaporate, but after a period of several months, there
was no reliable technique known to detect and identify the petrol-
eum distillate. In addition, they testified that the sooty resi-
due from the kerosene burn and the asphalt used to set the linol-
eum were not volatile petroleum distillates.

In other words, the report from the government chemist
was received in Havre about the end of June, 1971, more than a
month following the fire. All that a chemist for the appellant
could have found at that date was that he could find no presence
of accelerants, which would be expected.

On the other hand, the samples examined by the government
chemist, offered as State's exhibits D and E, were still intact,
still sealed, and still capable of examination. For reasons not
shown in the record, appellant never asked that his chemist be
permitted to examine those to show that the government chemists
were in error, if they were. In other words, the only evidence
available to the chemists for the state was still available for
the chemists for the appellant.

The trial court was correct in holding that there was no
actual prejudice to the appellant occasioned by the preindictment
delay.

Appellant's second contention is that the court erred in
admitting exhibit D, one of the coffee cans containing samples from
one of the holes burned through the floor. The contention is without

merit, both factually and legally.

Deputy state fire marshal Habeger testified that he took all of the samples from each of seven holes, that he put two or three samples from the first hole in one can (exhibit D) and then he put the remaining samples in the second can (State's proposed exhibit E). He made a sketch of the premises and on the sketch indicated where each of the seven holes was. The first hole was near the floor furnace and upon Haberger's sketch he indicated "point of origin". Hole number one was never established as the "point of origin" by any proof; in fact, Haberger testified that he believed all seven holes to be simultaneous points of origin. Appellant's counsel continued to refer to hole number one as the point of origin, and the transcript is clear that appellant's counsel became confused by Habeger's testimony and believed that Habeger had placed samples from the first three holes in the first can and samples from the remaining four holes in the second can. Since Habeger could not establish which holes had accelerants and which ones did not, defense counsel convinced the trial court that the samples in the second can were comingled, some coming from holes that had accelerants and some coming from holes that did not. The same argument is being used here to show that the same situation was true with the first can of samples. The trial court was not confused by the testimony and knew that the samples in the first can, exhibit D, came from only one hole, the first hole, the "point of origin" hole.

The only error committed by the trial court, and it was harmless, was in excluding State's proposed exhibit E. There should have been no accelerants in that house and the deputy state fire marshal took samples from that house and there were accelerants in both samples. What possible difference could it make, under the facts in this case, which hole had the accelerants?

- 6 -

The State was in a position to prove that there were accelerants in at least two different places and exhibit E should have been admitted.

Appellant's third contention is that the court erred in admitting the evidence from the forensic laboratory in two particulars. Appellant's first point is that once the samples reached the forensic laboratory in Washington, D.C., there were several people who had access to the laboratory and therefore the custodial chain of evidence was not established.

The samples in question were collected by the deputy state fire marshal, packaged by him and mailed by him to the alcohol, tobacco and firearms laboratory in Washington, D.C. One of the chemists from that laboratory testified that he received the package, that it was kept in that laboratory and the security room, it was examined by one of the chemists from that laboratory who also testified and it had been kept in the evidence room at that laboratory until the two chemists brought the samples to Montana. This is all that is required for a prima facie case. The State must identify the particular exhibit as relevant to the criminal charge and must show prima facie that no alteration or tampering with the exhibit has occurred. State v. Wong Fong, 75 Mont. 81, 241 P. 1072. Once that has been done, the burden of proving alteration shifts to appellant. State v. Fitzpatrick, ____Mont. ____, 516 P.2d 605, 30 St.Rep. 1052.

Appellant additionally contends that the State failed to use the best evidence in proving the results of the gas chromatograph; that the chromatogram record itself should have been introduced and proof made of the standards utilized by the chemist in interpreting the chromatogram. The contention has merit, technical though it may be, but the complaint came far too late. The chemist who actually examined the samples testified that he readily detected

accelerants by the use of the gas chromatogram and that there was a marked, distinguishable difference between these accelerants and the other nonvolatile petroleum distillates that the appellant contended were also in the floor. His testimony was lengthy and technical but that is the thrust of it. Following appellant's case in chief, the State called the second chemist from the forensic laboratory in Washington as its final rebuttal witness, the chemist who was in charge of the laboratory but who did not actually do the examination of the samples. Defense counsel realized during the cross-examination of this witness on rebuttal that he had overlooked both the chromatogram record and the standards, established that both were in existence, then moved to strike all of the testimony of both chemists on the grounds that during their testimony of the State's case in chief, they had not used the best evidence in explaining the results of the gas chromatograph test. The trial judge properly overruled the objection. Neither was relevant to this particular witness's testimony for he testified as a custodian of the laboratory and was in no position to testify as to what the other chemists utilized for his testimony relative to the examination of the samples. As stated before, the objection came far too late.

For the foregoing reasons, judgment of the trial court is affirmed.

_____
Hon. Robert Keller, District Judge,
sitting in place of Mr. Chief Justice
James T. Harrison.

We concur:

_____

_____

_____

_____
Justices