No. 81-267

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

THE STATE OF MONTANA,

Plaintiff and Respondent,

vs.

ELAINE GOLTZ,

Defendant and Appellant.

Appeal from: District Court of the Eighth Judicial District,
In and for the County of Cascade
Honorable Joel G. Roth, Judge presiding.

Counsel of Record:

For Appellant:

Mark Bauer argued, Great Falls, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
J. Fred Bourdeau, County Attorney, Great Falls, Montana
Carroll Blend, Deputy County Attorney, argued, Great Falls,
Montana

Submitted: January 12, 1982

Decided: APR 1 1982

Filed APR 1 1982

_Thomas J. Kearney_
Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

Defendant appeals from a conviction of felony theft following jury trial in the Eighth Judicial District Court, Cascade County. We affirm the District Court.

Defendant presents the following issues for review:

(1) Whether the District Court erred in denying defendant's motion to dismiss based upon an eighteen month pre-indictment delay.

(2) Whether the District Court erroneously allowed into evidence certain "uncorroborated admissions" by defendant.

(3) Whether the District Court erroneously instructed the jury in such a way as to shift the burden of proof to defendant.

(4) Whether the District Court erred in denying defendant's motion for a directed verdict of acquittal for failure of the State to prove its case beyond a reasonable doubt.

Defendant managed the Don Plaza Motel in Great Falls from July 1978 through January 1979. She was paid $800.00 per month or 16% of the take, whichever was more, and she had free use of an apartment in the motel. Early in her employment, her employer advanced defendant $3,200 so that she could pay certain pressing debts. Defendant's husband, a construction worker, was temporarily laid off in November.

Defendant's daily duties included registering guests, preparing individual registration cards, and keeping a log of charges accrued, expenditures made and motel receipts (cash, checks, and credit card charge slips). Approximately once a week defendant transferred the daily records and receipts to the bookkeeper, a local high school student, who prepared bank deposit slips, deposited receipts in the Don

Plaza bank account, and reconciled motel records and the motel bank account. The bookkeeper made seven deposits to the Don Plaza account in October.

Defendant offered to and did take over the bookkeeping during the bookkeeper's vacation in November. Bank records show only one deposit in November, on the 13th, covering receipts up to November 6, 1978. The next deposit, covering receipts after November 27, 1978, was made by the regular bookkeeper on December 5, 1978. There are no deposits for the period from November 7 through November 26, although an audit of the motel's books revealed over $5,000 in receipts for that period.

The discrepancy between motel receipts and bank deposits was not discovered until January, 1979, when the employers were notified that the Don Plaza bank account was overdrawn. An investigation revealed that defendant had filled out three bank deposit record slips, and turned them over to the bookkeeper, unaccompanied by bank receipts. She told the bookkeeper she had misplaced the bank receipts, but later admitted that she had never made the deposits, but had only prepared phony deposit slips. When defendant's employers confronted her in January about the overdraft, she told them she had deposited the money in her checking account. She wrote her employers two checks upon her account to cover the missing receipts; both checks were returned for insufficient funds.

Defendant has consistently maintained that one of the bags containing receipts was taken from her office, and the network of lies was intended only to protect her job until she could obtain money from her father to cover the loss. Her father never covered the loss, and he did not testify at trial.

In March of 1979, the County Attorney received the evidence upon which he based the subsequent prosecution. A delay of eighteen months followed, during which time the State was attempting to audit the motel books, track down travelers' checks, and investigate by mail. Defendant was charged with felony theft, by information on September 15, 1980, and arrested on October 23, 1980. Defendant's motion to dismiss for delay in prosecution was denied, and trial commenced on January 23, 1981. From a jury verdict of guilty, defendant appeals to this Court.

I.

Defendant argues that she was denied her right to a speedy trial by the eighteen month pre-indictment delay. She relies upon Barker v. Wingo (1972), 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101, and its numerous progeny in Montana; State v. Larson (1981), ____ Mont. ____, 623 P.2d 954, 38 St.Rep. 213; State v. Cassidy (1978), 176 Mont. 385, 578 P.2d 735; State v. Keller (1976), 170 Mont. 372, 553 P.2d 1013, to name a few. Defendant also argues that prosecutorial delay may justify reversal on a due process basis, as having prejudiced defendant's right to a fair trial. She relies upon United States v. Marion (1971), 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468; United States v. Lovasco (1977), 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752; and State v. Burtchett (1974), 165 Mont. 280, 530 P.2d 471.

Defendant's reliance upon the line of speedy trial cases arising under the Sixth Amendment is misplaced. Marion and Lovasco both clearly indicate that speedy trial guarantees do not extend to the period prior to formal accusation or arrest.

"In United States v. Marion, 404 U.S. 307, 92
S.Ct. 455, 30 L.Ed.2d 468 (1971), this Court
considered the significance, for constitution-
al purposes, of a lengthy preindictment delay.
We held that as far as the Speedy Trial Clause
of the Sixth Amendment is concerned, such de-
lay is wholly irrelevant, since our analysis
of the language, history, and purposes of the
Clause persuaded us that only 'a formal indict-
ment or information or else the actual restraints
imposed by arrest and holding to answer a crim-
inal charge . . . engage the particular protec-
tions' of that provision. Id., at 320, 92 S.Ct.
at 463. We went on to note that statutes of
limitations, which provide predictable, legis-
latively enacted limits on prosecutorial delay,
provide '"the primary guarantee, against bring-
ing overly stale criminal charges."' Id, at 322,
92 S.Ct. at 464, quoting United States v. Ewell,
383 U.S. 116, 122, 86 S.Ct. 773, 777, 15 L.Ed.
2d 627 (1966)." United States v. Lovasco, 431
U.S. at 788-789, 97 S.Ct. at 2048, 52 L.Ed.2d
at 758.

Cf. United States v. Mills (9th Cir. 1981), 641 F.2d 785, 787;

State v. Larson, ____ Mont. at ____, 623 P.2d at 957-

958, 38 St.Rep. at 215.

Both Marion and Lovasco, however, indicate that the

statute of limitations is not a defendant's only protection

against pre-indictment delay.

". . .[T]he Due Process Clause has a limited
role to play in protecting against oppressive
delay." United States v. Lovasco, 431 U.S.
at 789, 97 S.Ct. at 2048, 52 L.Ed.2d at 758.

". . .[T]he Due Process Clause of the Fifth
Amendment [and, here, the Fourteenth Amend-
ment] would require dismissal of the indict-
ment if it were shown at trial that the pre-
indictment delay in this case caused substan-
tial prejudice to [defendant's] rights to a
fair trial and that the delay was an inten-
tional device to gain tactical advantage
over the accused." United States v. Marion,
404 U.S. at 324, 92 S.Ct. at 465, 30 L.Ed.2d
at 481.

Cf. United States v. Cederquist (9th Cir. 1981), 641 F.2d

1347, 1351; United States v. Mills, 641 F.2d at 788; United

States v. Krasn (9th Cir. 1980), 614 F.2d 1229, 1235; United

States v. West (9th Cir. 1979), 607 F.2d 300, 304-305.

Those Ninth Circuit decisions addressing pre-indictment delay, subsequent to Marion and Lovasco, have established that the burden of proof is on the defendant and the prejudice alleged cannot be merely speculative. In West, the Ninth Circuit Court of Appeals stated:

> "The crucial element in the due process test established by Mays [United States v. Mays (9th Cir. 1977), 549 F.2d 670] is the finding of actual prejudice to the defendants. Satisfaction of this element is a prerequisite to finding a due process violation. United States v. Titus, 576 F.2d 210, 211 (9th Cir. 1978) [cert. denied, 439 U.S. 860, 99 S.Ct. 180, 58 L.Ed.2d 169]; Arnold v. McCarthy, 566 F.2d 1377, 1382 (9th Cir. 1978). If the prejudice is allegedly due to the loss of a witness, the defendant 'must show not only the loss of the witness and/or evidence but also [must] demonstrate how that loss is prejudicial to him.' United States v. Mays, supra at 677. Such proof must be definite and not speculative and '[t]he assertion that a missing witness might have been useful does not show the "actual prejudice" required by Marion.' Id at 677 . . ." United States v. West, 607 F.2d at 304.

This Court addressed the matter of pre-indictment delay in State v. Burtchett, supra, and added a wrinkle to the standards established in Marion, and later in the federal courts.

> ". . .[T]here is no question but that a delay in time between the commission of an offense and the commencement of the prosecution, by the filing of an information, termed 'preindictment delay' can be the denial of due process. [citing Marion.] Mere delay, in and of itself, is not sufficient. There must be either actual prejudice to the conduct of the defense, or that the State intentionally delayed to gain some tactical advantage over appellant, or to harass him. United States v. Marion, supra." State v. Burtchett, 165 Mont. at 283, 530 P.2d at 473. (Emphasis added.)

Defendant now argues that the "either/or" language in Burtchett clearly indicates that this Court intended that a due process violation could be found without defendant's

-6-

having to prove both improper intent and actual prejudice. The State argues that the Burtchett language was a mere "lapsus linguae," and this Court should now rule that both improper intent and actual prejudice must be found.

We find that defendant neither asserted and proved the State's improper intent nor proved actual prejudice resulting from the delay; therefore, the difference between the Burtchett standard and the Marion standard is not determinative here.

Defendant claims that because of the pre-indictment delay, she lost the testimony of one "key witness for the defense" and a number of unnamed Don Plaza employees who might have indicated the guilt of someone other than defendant. Defendant has failed to indicate the nature of the lost testimony and how it might be exculpatory. Such speculation is insufficient to establish actual prejudice. See United States v. West, 607 F.2d at 304-305; United States v. Mays, 549 F.2d at 677. Defendant claims the record shows that witnesses for the State were unable to remember certain details such as the exact dates of vacations or which employer confronted the defendant first. Defendant, again, has made no effort to show how those particular memory lapses impaired her defense. Indeed, the facts themselves were not disputed. Defendant never claimed that she had deposited the motel receipts or that she did not make out phony bank receipts, that she did not falsely tell her employers she had deposited the receipts in her own account, or that she had not written bad checks to "repay" her employers. Defendant erroneously concludes that proof of some failure of memory is automatically proof of prejudice. In United States v. Mills, 641 F.2d at 789, the Ninth Circuit Court of Appeals stated:

> "Nor does the claim that the witnesses'
> memories have dimmed without proof of
> impairment constitute actual prejudice.
> United States v. Rogers, 639 F.2d 438
> (8th Cir. 1981); Mays, supra."

There is no evidence that defendant's position was in any way impaired by failure of the State's witnesses to recall certain details.

Defendant mentions only one specific instance of her own memory failure from which some prejudice may flow. She claimed, during cross-examination, that she had never been paid more than $800.00 per month at the Don Plaza. The State produced a cancelled check to defendant for over $900.00. Defendant claims she forgot that paycheck in the two years between the offense and trial, and that being contradicted before the jury severely damaged her credibility. We do not find this single instance sufficient to mandate reversal of conviction. The contradiction was on a minor point not directly related to those actions of defendant which led to her conviction.

Finally, in United States v. Lovasco, 431 U.S. at 795-796, 97 S.Ct. at 2051, 52 L.Ed.2d at 762-763, the United States Supreme Court stated:

> "In our view, investigative delay is funda-
> mentally unlike delay undertaken by the Gov-
> ernment solely 'to gain tactical advantage
> over the accused,' United States v. Marion,
> 404 U.S., at 324, 92 S.Ct., at 465, precise-
> ly because investigative delay is not so one-
> sided. Rather than deviating from elementary
> standards of 'fair play and decency,' a pros-
> ecutor abides by them if he refuses to seek
> indictments until he is completely satisfied
> that he should prosecute and will be able
> promptly to establish guilt beyond a reason-
> able doubt. Penalizing prosecutors who defer
> action for these reasons would subordinate
> the goal of 'orderly expedition' to that of
> 'mere speed,' Smith v. United States, 360
> U.S. 1, 10, 79 S.Ct. 991, 997, 3 L.Ed.2d
> 1041 (1959). This the Due Process Clause
> does not require. We therefore hold that to

> prosecute a defendant following investigative
> delay does not deprive him of due process,
> even if his defense might have been somewhat
> prejudiced by the lapse of time." (Emphasis
> added.)

There is ample evidence that the delay in this case resulted

from continuing investigation by the State, e.g., its attempt

to track down credit card charge slips and travelers checks.

There was no error in the District Court's denial of defendant's

motion to dismiss due to delay.

## II.

Defendant maintains that the District Court erred by

allowing into evidence her employers' testimony that defendant

had falsely assured them the money had been deposited for

them into defendant's personal checking account. Defendant

concedes she has no hearsay objection, but argues that the

statements to her employers were inadmissible because they

were "uncorroborated admissions" and could never be corroborated

because they were untrue.

We do not accept defendant's rather ingenious argument,

for the simple reason that her statements were not admissions.

They were "false exculpatory statements," which are admissible.

> "False exculpatory statements by a party may
> be used not only to impeach, but also to prove
> consciousness of guilt and unlawful intent.
> Williamson v. United States, 310 F.2d 192, 199
> (9th Cir. 1962). See DeVore v. United States,
> 368 F.2d 396, 397 (9th Cir. 1966); 2 Wigmore
> on Evidence §278 (2) (3rd ed. 1940) [supp.
> 1981]." United States v. Pistante (9th Cir.
> 1971), 453 F.2d 412, 413.

Cf. Burden Young v. United States (9th Cir. 1966), 358 F.2d

429, 431, wherein the Circuit Court of Appeals held, that

admission into evidence of false exculpatory statements made

by defendant to an F.B.I. agent was not error "whatever

ground may have been relied on by the court."

-9-

An "admission" is defined as "an avowal or acknowledgement of a fact or of circumstances from which, together with other facts, guilt may be inferred." 22 C.J.S. Criminal Law §730(a). Ordinarily it is not the fact of the avowal but its substance, i.e., that some act was in fact done, which allows an inference of guilt. Here, it is not the substance of the avowal, but the fact that the avowal was false that allows an inference of guilt.

We hold that the statements in question were not admissions, but false exculpatory statements, and, as such, were properly admitted by the trial court.

## III.

Defendant argues that the trial court erred in its instructions to the jury. The trial court instructed the jury that:

> "Purpose or knowledge are manifested by the circumstances connected with the offense. Purpose or knowledge need not be proved by direct evidence, but may be inferred from acts, conduct and circumstances appearing in evidence." (Other instructions indicated that an omission could constitute an act.)

Defendant objected to the instruction as being "very close to a Sandstrom type of instruction." (Sandstrom v. Montana (1979), 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39.) The trial court refused defendant's proposed instruction that it is not the act alone, but the criminal intention together with the act, that makes the actor guilty. Defendant did not offer an instruction defining "inference," nor did she suggest that such an instruction be given. Defendant now argues that, without such an instruction, the effect of the instructions, taken as a whole, was to "shift the burden to the defendant to show that her failure to deposit the funds

of the Don Plaza Motel was not coupled with the purpose to deprive the owners of those funds." Such a shift of burden runs afoul of Sandstrom, according to defendant.

We disagree. In the first place, defendant cannot on appeal hold the State or the trial court responsible for their failure to include an instruction defining "inference," when she herself did not offer or request such an instruction.

> ". . . [I]f defendant felt further instruc-
> tions, including more specific instructions
> were necessary, it was incumbent upon him
> to request more specific instructions. No
> such request appears in the record." State
> v. Bretz (1979), ____ Mont. ____, 605 P.2d
> 974, 998, 36 St.Rep. 1037, 1067, cert.
> denied, 444 U.S. 994, 100 S.Ct. 529, 62 L.Ed.
> 2d 425.

Furthermore, the jury was adequately instructed that the State must prove each element of the offense charged. The instructions separated the several elements of the offense and clearly indicated that the State must prove "beyond a reasonable doubt to a moral certainty" that (1) defendant's purpose was to deprive the owners of their property, and (2) defendant purposely or knowingly obtained or exerted unauthorized control over the cash, checks and credit card charge slips. Finally, since the Sandstrom decision was reversed in the United States Supreme Court in 1979, this Court has been inundated by appeals attempting to equate "must presume" with "may infer," and thus bring the instructions on permissive inference as to intent within the Sandstrom ban. We have indicated that no such equation will be accepted. In State v. Bad Horse (1980), ____ Mont. ____, 605 P.2d 1113, 1120, 37 St.Rep. 45, 54, this Court cited State v. Coleman (on rehearing) (1979), ____ Mont. ____, 605 P.2d 1000, 1054, 36 St.Rep. 2237, 2241:

-11-

"The holding in Sandstrom is not to be constru-
ed to mean that whenever a trial court instructs
the jury that it may resort to inference to
determine subjective matters such as knowledge
or purpose, that thereby the State has been
relieved of its burden of proof. The United
States Supreme Court did not intend such limi-
tation, and we do not find any such intention
in the language of Sandstrom or its related
cases. The jury was not allowed to rest solely
upon the permitted inference in the Coleman
case, but under the instruction had to require
such an inference to meet the standard as be-
yond a reasonable doubt."

The disputed instruction here was not mandatory; the

instructions as a whole adequately informed the jury. We

find no shift of the burden of proof to the defendant. No

error.

IV.

The fourth and final allegation of error raised by

defendant is that the trial court improperly denied her

motion for a directed verdict of acquittal. Defendant

argues that the State failed to eliminate the "reasonable

possibility" that someone else stole the receipts, and also

failed to prove that defendant exerted unauthorized control

over the receipts; therefore, no reasonable juror could find

all elements of the crime were proven beyond a reasonable

doubt.

This Court addressed the question of a directed verdict

of acquittal in State v. Smith (1980), ____ Mont. ____, 609

P.2d 696, 698, 37 St.Rep. 583, 586:

"Section 46-16-403, MCA provides:

"'When, at the close of the State's evidence
or at the close of all the evidence, the evi-
dence is insufficient to support a finding or
verdict of guilty, the court may, on its own
motion or on the motion of the defendant,
dismiss the action and discharge the defen-
dant . . .'

"The general rule in Montana appears to be
that a directed verdict of acquittal is ap-
propriate in criminal cases 'only where the

> State fails to prove its case and there is
> no evidence upon which a jury could base
> its verdict.' State v. Yoss (1965), 146
> Mont. 508, 409 P.2d 452, 455. 'The decision
> whether to dismiss the charge or direct a
> verdict of acquittal lies within the sound
> discretion of the trial court and will be
> disturbed on appeal only when abuse is
> shown.' State v. Just (1979), Mont., 602
> P.2d 957, 965, 36 St.Rep. 1649."

And in State v. Pendergrass (1980), ____ Mont. ____, 615

P.2d 201, 205, 37 St.Rep. 1370, 1375, we stated:

> ". . . This Court remains ever mindful of
> one fundamental rule -- that questions of
> fact must be determined solely by the jury,
> and that given a certain legal minimum of
> evidence, this Court on review will not
> substitute its judgment for that of the
> jury. . . State v. Merseal (1975), 167 Mont.
> 412, 415, 538 P.2d 1366, 1367-1368."

Pendergrass and Merseal also indicate that the test of

evidence sufficient to warrant a directed verdict of acquittal

is the same as the test of sufficiency of evidence on appeal,

i.e., whether, viewing the evidence in the light most favorable

to the State, substantial evidence exists to support a

verdict of guilty. The State presented evidence showing

that defendant handled both the motel receipts and the bank

records during the period for which receipts are missing;

that she prepared phony bank deposit records, and built a

framework of easily-discovered lies around her failure to

deposit the receipts; that she had a history of indebtedness;

that her husband was unemployed in November of 1978. Both

motive and opportunity were established by the evidence;

together with the evidence of defendant's evasive behavior,

there was more than adequate support for a guilty verdict.

Affirmed.

_____
Justice

-13-

We Concur:

Gen S Daly

John Conway Harrison

Daniel J Shea

Frank B Morrison

Justices

-14-