No. 87-468

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

---

STATE OF MONTANA,

        Plaintiff and Respondent,

   -vs-

NORMAN GERALD BARTNES,

        Defendant and Appellant.

---

APPEAL FROM:  District Court of the Sixteenth Judicial District
In and for the County of Custer,
The Honorable Alfred B. Coate, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        James G. Hunt, Helena, Montana

    For Respondent:

        Hon. Mike Greely, Attorney General, Helena, Montana
        Paul D. Johnson, Asst. Atty. General, Helena
        Keith D. Haker, County Attorney, Miles City, Montana

---

Submitted on Briefs:  Oct. 13, 1988

Decided:  November 29, 1988

Filed:

Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

The defendant, Mr. Bartnes, was convicted by a jury of criminal sale of dangerous drugs in the District Court for the Sixteenth Judicial District, Custer County. He appeals his conviction and sentence. We affirm.

The issues presented to this Court are:

1. Was the defendant denied his constitutional rights by either pre-indictment or post-indictment delay?

2. Did the District Court err in refusing the defendant's jury instructions on criminal possession of dangerous drugs or criminal possession with intent to sell?

Robert Fairchild, an undercover agent for the Montana Criminal Investigation Bureau, testified at trial that in May of 1986, the defendant had sold him methamphetamine, which is a dangerous drug under Montana law otherwise known as "crank." Agent Fairchild testified that the drug connection was established through Sandra Jo Stone, from whom he had purchased drugs during the course of his undercover investigation in Miles City, beginning in January 1986.

On May 7, 1986, Agent Fairchild contacted Ms. Stone and told her he wanted to buy an ounce of methamphetamine. Ms. Stone told him that she would make contact with a person named "Bruno," whom Agent Fairchild identified at trial as the defendant. Ms. Stone and Agent Fairchild went to a bar where the defendant was playing cards. Ms. Stone testified that she made contact with the defendant at the bar, but that no sale took place at that time and that she told Agent Fairchild to stop by her residence later than evening. Agent Fairchild testified that when he arrived, Ms. Stone made a phone call to arrange the drug sale, presumably with the man named "Bruno." Following the conversation, Ms. Stone told

2

Agent Fairchild he could purchase an ounce of methamphetamine after the bars closed at 2 a.m.

Agent Fairchild later telephoned Ms. Stone and arranged to meet her at another bar to consummate the deal. He went to the bar accompanied by a Billings detective, and was told by Ms. Stone that she would take him to the defendant's house. Agent Fairchild testified that at the residence, the defendant produced a small cellophane bag containing a white powdery substance, and that he gave the defendant $1,700 cash in exchange for the contents. A forensic scientist for the state crime laboratory testified that the powder sold to Agent Fairchild contained methamphetamine. In addition to providing "crank," Agent Fairchild testified that the defendant also offered to sell him quantities of other drugs including LSD, ounces of cocaine, and pounds of marijuana.

I

Was the defendant denied his constitutional rights by either pre-indictment or post-indictment delay?

The information was filed in this matter on September 30, 1986. This occurred 146 days after the May 7 transaction which led to the charges. On February 5, 1987, an omnibus hearing was held and trial was set for March 24, 1987, which was 175 days after the information was filed and 321 days after the May 7 incident. Eight days prior to trial, the defendant filed a motion to dismiss for delay in charging, or in the alternative, for failure to provide a speedy trial. The District Court denied the motion because there was no showing that the defendant had suffered from any delay or that the delay was caused by the State. The defendant contends that after reviewing the transcript, it is apparent that the delay did in fact contribute to memory loss and resulted in prejudice to him. He also contends that the

3

State's reasons for the delay are not sufficient to preclude dismissal of the charges because his right to a speedy trial was violated.

In analyzing Mr. Bartnes' claims, we first note that this Court has distinguished between pre-indictment delay and post-indictment delay. See State v. Goltz (1982), 197 Mont. 361, 642 P.2d 1079, and cases cited therein. The reasoning behind this distinction rests upon the interpretation of the speedy trial clause of the Sixth Amendment. The United States Supreme Court has held that as far as the speedy trial clause is concerned, any pre-indictment delay is irrelevant since it is only a formal indictment or information or actual restraint imposed by arrest which triggers the protection of that provision. United States v. Lovasco (1977), 431 U.S. 783, 788-89, 97 S.Ct. 2044, 2048, 52 L.Ed.2d 752, 758. As this Court pointed out in Goltz, the protections which guard against lengthy pre-indictment delays are the statute of limitations and the due process clause of the Fifth and Fourteenth Amendments. Goltz, 642 P.2d at 1081-82. Thus, two different Constitutional provisions offer protection to the criminal defendant at various stages of the proceedings. The pre-indictment stage is protected by the due process clause, while the post-indictment stage is protected by the speedy trial clause.

Under a due process analysis, this Court has held that the inquiry is whether the pre-indictment delay caused substantial prejudice to the defendant's right to a fair trial and whether the delay was used as an intentional device to gain a tactical advantage over the accused. Goltz, 642 P.2d at 1082, citing United States v. Marion (1971), 404 U.S. 307, 324, 92 S.Ct. 455, 465, 30 L.Ed.2d 468, 481. At the pre-indictment stage, the burden of proof is on the defendant

4

to establish actual prejudice. Goltz, 642 P.2d at 1082, citing United States v. West (9th Cir. 1979), 607 F.2d 300, 304.

In this case there were 146 days, or just under five months, between the time Mr. Bartnes sold the drugs to Agent Fairchild and the filing of the information. Agent Fairchild's testimony indicated that it was not practical to make each arrest at the time he became aware of the illegal activity due to the nature and size of the investigation. He testified that it was necessary to maintain his undercover status in order to assure the presence of enough agents to simultaneously make all the arrests involved in the Miles City investigation. The record fails to show that the State used the pre-indictment period to gain a tactical advantage over the accused.

The defendant contends that pre-indictment delay caused actual prejudice by dimming the memories of the witnesses and that this interfered with his ability to present an entrapment defense. Entrapment is an affirmative defense requiring the defendant to prove 1) criminal intent or design originating in the mind of the police officer or informer; 2) absence of criminal intent or design originating in the mind of the accused; and 3) that the accused was lured or induced into committing a crime he had no intention of committing. State v. Canon (Mont. 1984), 687 P.2d 705, 710, 41 St.Rep. 1659, 1665. The record in this case is replete with evidence that the defendant was engaged in the business of selling dangerous drugs. This evidence refutes Mr. Bartnes' contention that he had no criminal intent or that he would not have made the sale without inducement from the agent.

The defendant argues that Ms. Stone could not sufficiently recall a conversation with him in which he expressed

5

reservation about dealing with Agent Fairchild. After examining her testimony, we conclude that the testimony does not indicate an inability to recall any facts which support the defendant's claim that he had no criminal intent or that Agent Fairchild lured him into selling the drugs. If anyone induced Mr. Bartnes to make the sale, it was Ms. Stone who responded to the agent's request by leading him to the defendant. There is no evidence that Agent Fairchild prodded or coerced Ms. Stone into arranging the deal. The testimony of both Agent Fairchild and Ms. Stone establishes that Ms. Stone acted upon her own initiative in soliciting the help of Mr. Bartnes to obtain the drugs. We hold that there has been no violation of the defendant's due process rights by any pre-indictment delay.

The defendant also contends that his right to a speedy trial was violated due to delays chargeable to the State. The information was filed September 30, 1986. Trial was scheduled for March 24, 1987, but did not take place until June 24, 1987. The defendant concedes that he is responsible for that three month period of delay. Thus, we are concerned with the 175 days from the filing of the information to the scheduled trial date.

To evaluate the effect of any post-indictment delay under the speedy trial clause of the Sixth Amendment, the United States Supreme Court has identified four factors to consider 1) length of the delay; 2) reason for the delay; 3) the defendant's assertion of the right; and 4) prejudice to the defendant. Barker v. Wingo (1972), 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101, 117. In applying the factors, the length of delay acts as a triggering mechanism so that:

> [u]ntil there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance. Nevertheless, because of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case. 407 U.S. at 530-31, 92 S.Ct. at 2192-93, 33 L.Ed.2d at 117-18.

A 175 day post-indictment period is somewhat less than the delay periods in other cases where this Court has found a presumption of prejudice. State v. Palmer (Mont. 1986), 723 P.2d 956, 43 St.Rep. 1503, (256 days); State v. Chavez (1984), 213 Mont. 434, 691 P.2d 1365, (214 days); State v. Ackley (1982), 201 Mont. 252, 653 P.2d 851, (257 days). The State argues that the 175 day delay less the period of time attributable to the defendant through several motions, leaving a total of 152 days, is insufficient to establish a presumption of prejudice. In a strict comparison with previous cases cited above, we tend to agree. However, when looking to the "peculiar circumstances of the case" as suggested by the Court in Barker, we choose not to halt our analysis at this point. The record shows that the majority of the delay is attributable to the State, and that this is a relatively uncomplicated case both in its preparation and presentation. The State is therefore required to give a reasonable excuse for that delay or to show that the defendant was not prejudiced. Palmer, 723 P.2d at 958.

The second factor in the Barker analysis is the reason for the delay. The State contends that the 152 days of delay attributable to itself was institutional rather than intentional and was not used as a tactical device. While delay inherent in the system weighs less heavily than intentional delay, it is still chargeable to the State and does not offer an excuse. Ackley, 653 P.2d at 853-54.

The third <u>Barker</u> factor is the assertion of the right to a speedy trial by the defendant. The State concedes that Mr. Bartnes asserted his right in a timely and proper fashion.

Finally, the State must show that the defendant was not prejudiced by the delay. Three interests which are adversely affected by prejudice as identified in <u>Barker</u> have been adopted by this Court: 1) to prevent oppressive pretrial incarceration; 2) to minimize anxiety and concern of the accused; and 3) to limit the possibility that the defense will be impaired. <u>Chavez</u> 691 P.2d 1369. In this case, the defendant was in jail only one day prior to trial. The defendant's assertion of prejudice relates to the third interest cited above, in that the delay caused an impairment of memory which affected his ability to present his entrapment defense.

We have already discussed this matter in relation to pre-indictment delay and we reach the same conclusion regarding any post-indictment delay. The testimony of Ms. Stone does not reveal that she suffered any memory loss relating to the elements of an entrapment defense. The record fails to demonstrate that Mr. Bartnes suffered oppressive pretrial incarceration or anxiety, or that the defense was impaired in any way. We conclude that his right to a speedy trial has not been violated.

II

Did the District Court err in refusing the defendant's jury instructions on criminal possession of dangerous drugs or criminal possession with intent to sell?

The defendant was charged with the offense of criminal sale of dangerous drugs in violation of § 45-9-101, MCA. He argues that the District Court erred in failing to instruct the jury regarding the lesser included offenses of criminal

8

possession of dangerous drugs in violation of § 45-9-102, MCA, and criminal possession with intent to sell in violation of § 45-9-103, MCA. Under the theory upon which the defendant's case was tried, such instructions on a lesser included offense theory were not appropriate.

The defendant argued in his case in chief that the State was guilty of entrapment by its use of the undercover agent and Ms. Stone soliciting the sale of drugs. If the defendant had convinced the jury of entrapment, he would have been entitled to an acquittal of the charge of criminal sale of dangerous drugs. In State v. Ostwald (1979), 180 Mont. 530, 538-39, 591 P.2d 646, 651, this Court stated:

> . . . where an accused is either guilty of the offense charged or is entitled to an acquittal . . . an instruction on the lower offense is not necessary and is properly refused. The Court may not be put in error for refusing to instruct on a lesser offense in such cases.

We further point out that criminal sale of dangerous drugs does not include possession as an element of the crime. Criminal sale of dangerous drugs is defined as follows:

> A person commits the offense of criminal sale of dangerous drugs if he sells, barters, exchanges, gives away, or offers to sell, barter, exchange, or give away or manufactures, prepares, cultivates, compounds, or processes any dangerous drug, as defined in § 50-32-101.

Section 45-9-101(1), MCA. As the statute makes clear, possession is not an element of the crime with which the defendant was charged.

We therefore conclude that the District Court did not err in refusing to give the offered instructions on criminal

9

possession of dangerous drugs and criminal possession with intent to sell.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices