No. 91-210

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

STATE OF MONTANA,

        Plaintiff and Respondent,

-vs-

PERRY KRINITT,

        Defendant and Appellant.

APPEAL FROM: District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable Larry w. Moran, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

            Larry Jent; Williams, Jent & Dockins, Bozeman, Montana

        For Respondent:

            Hon. Marc Racicot, Attorney General; Kathy Seeley, Asst. Atty. General, Helena, Montana
            A. Michael Salvagni, County Attorney; Jennifer Bordy, Deputy, Bozeman, Montana

FILED

DEC 12 1991

*Ed Smith*

Filed: CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs: October 3, 1991

Decided: December 12, 1991

_____
Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

Appellant Perry Krinitt was charged by information with one count of theft, or in the alternative, one count of forgery. Following a jury trial, he was found guilty of theft and not guilty of forgery. Krinitt appeals from the judgment of conviction. We affirm.

Krinitt raises three issues:

1. Did the delay in filing criminal charges violate appellant's right to due process?

**2.** Was sufficient evidence presented to prove that appellant intended to deprive the owner, his spouse, of the property?

**3.** Was the money taken "property normally accessible to both spouses" under § 45-6-303(2), MCA?

Perry Krinitt (Krinitt) married Florence Krinitt (Mrs. Krinitt) in 1970. Mrs. Krinitt was the beneficiary of a family trust and had been receiving income from the trust on a quarterly basis since she was 22 years old, approximately one year before her marriage to Krinitt. She continued to receive the trust income during the marriage. She received a check from the trust in January, April, July, and October, usually between the 10th and 15th of the month.

Because of financial problems, the Krinitts filed for bankruptcy in 1981. They eventually lost their home. Mrs. Krinitt felt that her husband was unable to control his financial situation and spending habits, and took steps to separate her finances from his. After the bankruptcy, she did not enter into joint financial

2

obligations with Krinitt. She did not have a joint bank account with him. After she was discharged from bankruptcy, she reaffirmed certain of the debts and instituted a repayment schedule in **1983.**

The Krinitts were dependent on the income from Mrs. Krinitt's trust to pay bills and make debt payments. Some years earlier Krinitt had taken one of the trust checks and cashed it without Mrs. Krinitt's knowledge, making it difficult for her to meet her obligations. In order to protect her ability to pay bills and debt payments, in **1985** she requested the trustee, Wells Fargo Bank, to send the quarterly dividend checks to her attorney's office, rather than her home. The dividend checks were deposited into a trust account from which she and her attorney paid bills and other obligations. Mrs. Krinitt also received a monthly income for household expenses. Krinitt did not have access to the trust account or these funds.

Beginning in **1985,** and continuing through **1986** and **1987,** all of the trust dividends were sent directly to Mrs. Krinitt's attorney. The attorney would not release any of this money to Krinitt unless Mrs. Krinitt authorized him to do so.

In September **1985,** Mrs. Krinitt filed a petition for legal separation. The Krinitts, however, continued to live together **until mid-1988.** In October **1985,** Mrs. Krinitt obtained a temporary restraining order to prevent Krinitt from transferring, encumbering, concealing, or disposing of any property. On November 7, **1985,** the District Court ordered that "both [Mrs. Krinitt] and [Krinitt] are restrained from transferring,

3

encumbering, concealing or otherwise disposing of any property, except in the usual course of business, or for the necessities of life and they are required to notify each other of any proposed extraordinary expenditures . . . ."

In January 1988, Mrs. Krinitt was expecting to receive her quarterly dividend check on about the 10th of the month. When the check did not arrive, she began to get worried. She called her attorney several times, but he had not received the check. She called Wells Fargo Bank and was told the check had been mailed about January 10th. Wells Fargo Bank informed her that the check had already been cashed. Krinitt had deposited the check in his account at Western Federal Savings and Loan on January 14, 1988. Mrs. Krinitt had no authority over this account, and was not even aware of its existence in January 1988.

The dividend check was for $8015. When Krinitt presented it to the teller at Western Federal Savings, the check had the signature "Florence Elizabeth Krinitt" endorsed on the back. Krinitt put his own signature on the check in front of the teller. Mrs. Krinitt testified that she had not signed the check and the signature was not hers. She testified that it was apparent from the face of the check that the check had been mistakenly mailed to the post office box she shared with Krinitt, instead of to her attorney's address. When Mrs. Krinitt questioned him about the lost check, Krinitt at first denied seeing it. Later, however, he admitted to her that he had cashed the check.

4

Mrs. Krinitt told her attorney of what had happened, and the attorney notified Western Federal Savings that the check had been cashed improperly. In order to recover her lost money, Mrs. Krinitt filed an affidavit of forgery with Western Federal Savings on February 18, 1988. Western Federal Savings reimbursed Mrs. Krinitt the $8015. Western Federal Savings was unable to charge Krinitt for the loss because there was never enough money in his account. Western Federal Savings reported the matter to the Bozeman Police Department.

An officer of the police department interviewed Mrs. Krinitt in late February 1988. Mrs. Krinitt was reluctant to participate in the police investigation, but agreed to an interview. On March 1, 1988, the police department submitted a request for prosecution to the Gallatin County Attorney's Office. However, the county attorney's office decided not to file charges at that time. Apparently the main reason the county attorney did not proceed with prosecution was the fact that Mrs. Krinitt was barred from testifying against her husband by § 26-1-802, MCA (spousal privilege), and § 46-16-212, MCA (competency of spouses). The county attorney did not feel that he could prove the charges without her testimony.

In February 1988, Mrs. Krinitt filed a petition for divorce. The couple was divorced in May 1989.

In August 1988, Western Federal Savings sent Krinitt a demand letter to recover the $8015 he had misappropriated. In response,

Krinitt agreed to repay the money and requested a payment schedule be set up.

On December 12, 1989, the Gallatin County Attorney filed an information charging Krinitt with one count of theft, § 45-6-301(1), MCA, or in the alternative, one count of forgery, § 45-6-325(1), MCA. Following a jury trial, Krinitt was convicted of one count of theft. The District Court placed Krinitt on probation and deferred imposition of sentence for three years upon certain conditions, including payment of a $10,000 fine and $3674 in other charges. He appeals from his conviction.

I

Did the delay in filing criminal charges violate appellant's right to due process?

Krinitt notes that he took and cashed his wife's dividend check in January 1988, and the police department requested the Gallatin County Attorney's Office to initiate prosecution in March 1988, but the county attorney delayed prosecution until December 1989. Krinitt contends that the nearly two year delay in filing criminal charges against him violated his right to due process. We disagree.

This Court has previously considered the circumstances in which pre-indictment delay may constitute a denial of due process. *See, e.g., State v. Curtis* (1990), 241 Mont. 288, 787 P.2d 306. Because past decisions of this Court and other courts have left some uncertainty as to the appropriate standard to be applied, we take this opportunity to clarify Montana law on this issue.

The seminal case in this area of the law was ***United States v. Marion*** (1971), 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468. The Supreme Court noted that the primary guarantee against bringing overly stale criminal charges is the applicable statute of limitations. 404 U.S. at 322-24, 92 S.Ct. at 464-65, 30 L.Ed.2d at 479-81. Because the defendants in *Marion* only made a claim of potential prejudice from the delay in prosecution, rather than actual prejudice, the Court did not need to decide the case under a due process analysis. However, anticipating that the defendants could raise a claim of actual prejudice upon reinstatement of the criminal proceedings, the Court discussed the application of the due process clause:

> Thus, the Government concedes that the Due Process Clause of the Fifth Amendment would require dismissal of the indictment if it were shown at trial that the pre-indictment delay in this case caused substantial prejudice to appellees' rights to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused. However, we need not, and could not now, determine when and in what circumstances actual prejudice resulting from pre-accusation delays requires the dismissal of the prosecution. Actual prejudice to the defense of a criminal case may result from the shortest and most necessary delay; and no one suggests that every delay-caused detriment to a defendant's case should abort a criminal prosecution. To accommodate the sound administration of justice to the rights of the defendant to a fair trial will necessarily involve a delicate judgment based on the circumstances of each case. [Citations omitted.]

404 U.S. at 324-25, 92 S.Ct. at 465-66, 30 L.Ed.2d at 481.

In the years following the *Marion* decision, federal and state courts, including this Court, had occasion to review due process

7

claims under the *Marion* standard. However, as noted by the Ninth circuit in *United States v. Mays* (1977), 549 F.2d 670, 675:

> Since the *Marion* decision, there has been a good deal of confusion as to whether the two elements delineated in the opinion--actual (or substantial) prejudice, and intentional delay by the government for an improper purpose--are to be applied in a conjunctive or disjunctive manner. Indeed, as with the other circuits, this Circuit has not been entirely consistent in its articulation of the proper standard.

*See* 549 F.2d at 676-77 (discussing arguments in favor of both interpretations.)

A similar uncertainty was expressed in certain Montana cases, In *State v. Burtchett* (1974), 165 Mont. 280, 283, 530 P.2d 471, 473, *cert. denied,* 420 U.S. 974, 95 S.Ct. 1397, 43 L.Ed.2d 654 (1975), a case relied upon by Krinitt, this Court determined that pre-indictment delay can result in a denial of due process where there is "either actual prejudice to the conduct of the defense, or . . . the State intentionally delayed to gain some tactical advantage over [the defendant] or to harass him." In *State v. Bartnes* (1988), 234 Mont. 522, 525, 764 P.2d 1271, 1274, we described the relevant inquiry as "whether the pre-indictment delay caused substantial prejudice to the defendant's right to a fair trial and whether the delay was used as an intentional device to gain a tactical advantage over the accused."

In *State v. Goltz* (1982), 197 Mont. 361, 642 P.2d 1079, and *State v. Curtis* (1990), 241 Mont. 288, 787 P.2d 306, the defendants had proven neither intentional delay designed to gain a tactical advantage,

8

nor actual prejudice resulting from the delay; this Court declined to decide the question of whether either element alone or both elements together were required to support a due process claim.

In *United States v. Lovasco* (1977), 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752, the United States Supreme Court provided further guidance in evaluating these due process claims. The Court explained:

> *Marion* makes clear that proof of prejudice is generally a necessary but not sufficient element of a due process claim, and that the due process inquiry must consider the reasons for the delay as well as the prejudice to the accused.

431 U.S. at 790, 97 S.Ct. at 2048-49, 52 L.Ed.2d at 759.

Thus, in considering a defendant's claim that pre-indictment delay violated his due process rights, the court must first determine whether the defendant suffered actual, substantial prejudice. *See United States v. Valentine* (9th Cir. 1986), 783 F.2d 1413, 1416-17. If the defendant does not demonstrate actual prejudice resulting from the delay, no due process violation will be found. Accordingly, the language of *State v. Burtchett,* cited above, which implied that a due process violation could be found based solely on the state's intentional delay, without a showing of prejudice, is incorrect.

Upon a showing that the defendant suffered actual, substantial prejudice from the delay, the court must then weigh the justification for the delay, as well as the absolute length of the delay, to determine if due process has been denied. *See Lovasco,* 431

9

U.S. at 790, 97 S.Ct. at 2048-49, 52 L.Ed.2d at 759; *Mays*, 549 F.2d at 677-78 (where defendant has established actual prejudice due to unusually lengthy pre-indictment delay, it then becomes incumbent upon the government to provide the court with its reasons for the delay; negligent conduct will be weighted less heavily than deliberate delays). *See also United States v. Moran* (9th Cir. 1985), 759 F.2d 777, 780-83, *cert. denied*, 474 U.S. 1102, 106 S.Ct. 885, 88 L.Ed.2d 920 (1986).

Ultimately, in making a determination on this type of due process claim, the court should be guided by the principle enunciated in *United States v. Lovasco*, 431 U.S. at 790, 97 S.Ct. at 2049, 52 L.Ed.2d at 759:

> We are to determine only whether the action complained of--here, compelling respondent to stand trial after the Government delayed indictment to investigate further --violates those "fundamental conceptions of justice which lie at the base of our civil and political institutions," and which define "the community's sense of fair play and decency." [Citations omitted.]

Applying this standard to the present case, we conclude that Krinitt has not demonstrated that his due process rights were violated. As an initial consideration, we note that the prosecution was commenced within the applicable five year statute of limitations. Section 45-1-205(2)(a), MCA.

We look next to the issue of whether the defendant suffered actual, substantial prejudice from the two year delay in prosecution. Krinitt contends he was prejudiced by the delay because in the interim he and Mrs. Krinitt were divorced, and he

10

could no longer rely on § **26-1-802, MCA** (spousal privilege), and § **46-16-212, MCA** (competency of spouses), to prevent her from testifying against him.  We disagree.  The fact that he was unable to prevent a witness from coming into court and testifying about the theft does not constitute "prejudice" to the defendant.  Krinitt was not hindered in raising any legitimate defense to the commission of the crime.

Krinitt next contends he was prejudiced because, in response to the demand letter from Western Federal Savings, he sent a letter to the bank's attorney indicating that he wished to repay the money and requesting a payment schedule be set up.  The jury was informed of Krinitt's letter.  Krinitt argues he would not have agreed to repay the money if he had known he was facing criminal charges.  We do not agree, however, that Krinitt's offer caused substantial prejudice sufficient to warrant a dismissal of the prosecution.

First, we note that Krinitt's offer of repayment was made in a letter dated September **7, 1988,** only six months after the prosecutor received the request for prosecution.  The delay at that point was not very great, and any delay after that time did not add to the effect of the admission.  Krinitt's claim that he would not have agreed to repay the money if he had known he was facing criminal charges is speculative.  If Krinitt knew in September **1988** that he faced criminal charges, he may well have found it in his best interest to admit owing the money to the bank.  Further, the State did not introduce the correspondence with the bank into evidence as part of its case in chief.  The letters were introduced

11

on cross-examination after Krinitt took the stand and claimed that until the information was filed he had no knowledge that he was being accused of forging Mrs. Krinitt's signature on the check.

Finally, Krinitt contends his credibility was impeached because at trial, before the correspondence with the bank was admitted into evidence, he testified and denied knowing about the accusation of forgery or corresponding with Western Federal Savings in the matter. We are without sympathy for this latter claim. A criminal defendant is not "prejudiced" by having the truth revealed after he has testified falsely.

Because Krinitt has not shown that he suffered actual, substantial prejudice as a result of the delay in prosecution, he cannot prevail on his due process claim. We therefore need not review the reasons given by the government for the delay. We conclude that the delay in prosecution did not violate Krinitt's right to due process.

## II

Was sufficient evidence presented to prove that appellant intended to deprive the owner, his spouse, of the property?

The offense of theft, where committed as in the instant case, includes the element of intent or purpose:

> (1) A person commits the offense of theft when he purposely or knowingly obtains or exerts unauthorized control over property of the owner and:
> (a) has the purpose of depriving the owner of the property:
> (b) purposely or knowingly uses, conceals, or abandons the property in such manner as to deprive the owner of the property: or

12

(c) uses, conceals, or abandons the property knowing such use, concealment, or abandonment probably will deprive the owner of the property.

Section **45-6-301(1)**, MCA.

Krinitt contends the State did not present sufficient evidence to prove that he had the requisite intent. We disagree.

The evidence showed that Krinitt knew he was not authorized to spend his wife's dividend check. When the check was mistakenly sent to the mailbox he shared with Mrs. Krinitt, he took the check without informing her. He forged her signature on the check, and without her consent, deposited the check in his own individual account. Mrs. Krinitt had no knowledge of this account, and no authority over it. Krinitt immediately began spending the money, including writing one check for **$3998** the day after making the deposit. When questioned by Mrs. Krinitt about the dividend check, he at first denied knowing what had happened to it. Only after his wife questioned him repeatedly did he admit that he had taken the check. He did not reimburse his wife for the amount of the check.

The evidence was sufficient to prove that Krinitt intended to deprive his wife of the $8015.

### III

Was the money taken "property normally accessible to both spouses" under § **45-6-303(2)**, MCA?

Section **45-6-303(2)**, MCA, provides:

It is no defense that the theft was from the offender's spouse, except that misappropriation of household and personal effects or other property normally accessible to both spouses is theft only if it occurs after the parties have ceased living together.

13

Krinitt contends that he cannot be convicted of the crime of theft because he and Mrs. Krinitt were living in the same home and the money he took was "property normally accessible to both spouses." This contention is incorrect.

The dividend checks belonged to Mrs. Krinitt. The checks were mailed directly to her attorney's office. Since 1985 Krinitt had no access to this money, and Mrs. Krinitt's attorney would not have given him any of the money without authorization from Mrs. Krinitt. Krinitt knew he was not authorized to spend this money. That this money was not "normally accessible" to Krinitt was clearly evidenced by the fact that he had to forge his wife's signature on the check in order to negotiate it. Although in this instance the check was mistakenly sent to a mailbox which was accessible to both Mr. and Mrs. Krinitt, the dividend income was not "property normally accessible to both spouses."

We affirm the judgment of the District Court.

_____
Ju tice

We concur.

_____
Chief Justice

_____

_____

_____
Justices

14

December 12, 1991

<u>CERTIFICATE OF SERVICE</u>

**I** hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Larry Jent
Williams, Jent & Dockins
506 E. Babcock
Bozeman, MT  59715

Hon. Marc Racicot, Attorney General
Kathy Seeley, Asst. Atty. General
Justice Bldg.
Helena, MT  59620

A. Michael Salvagni, County Attorney
Jennifer Bordy, Deputy
615 S. 16th
Bozeman, MT  59715

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
Deputy