No. 99-169

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 115

299 Mont. 412

3 P. 3d 597

STATE OF MONTANA,

Plaintiff and Respondent,

v.

BARBARA BURT,

Defendant and Appellant.

---

APPEAL FROM: District Court of the Eighteenth Judicial District,

In and for the County of Gallatin,

The Honorable Thomas A. Olson, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Brock Albin; Albin Law Office, Bozeman, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General; John Paulson,

Assistant Attorney General; Helena, Montana

Marty Lambert, Gallatin County Attorney; Matt Putzier, Deputy

County Attorney, Bozeman, Montana

---

Submitted on Briefs: September 23, 1999

Decided: May 4, 2000

Filed:

_____

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 Appellant Barbara Burt (Burt) appeals from the judgment and orders of the District Court.

¶2 We affirm.

¶3 The following issues are presented on appeal:

¶4 1. Whether the District Court erred in concluding that the preindictment delay was not a violation of due process.

¶5 2. Whether the District Court erred in denying Burt's motion to dismiss for lack of speedy trial.

## Standard of Review

¶6 We review a district court's conclusions of law *de novo* to determine whether they are correct. *See* Steer, Inc. v. Dept. Of Revenue (1990), 245 Mont. 470, 474-75, 803 P.2d 601,

603. We review a district court's findings of fact to determine whether they are clearly erroneous. *See* Interstate Production Credit v. DeSaye (1991), 250 Mont. 320, 323, 820 P.2d 1285, 1287.

Factual and Procedural Background

¶7 In June, 1990 Burt was hired as office manager and bookkeeper for Sunbird Aviation (Sunbird), a fixed-base aviation services company. Burt handled Sunbird's books, accounts payable and receivable, and payroll. She had authority to sign checks for Sunbird. In October, 1995, Burt resigned her position.

¶8 Following Burt's departure from Sunbird, Sunbird's new bookkeeper and Sunbird's president, Greg Mecklenburg, reviewed Sunbird's bank statements from the previous year and discovered that each one of the bank statements was missing approximately four canceled checks. These checks were payable either to "cash" or to Burt. Further investigation established that from June, 1990 Burt wrote approximately three hundred unauthorized checks on Sunbird's account and that she also wrote approximately forty-five duplicate payroll checks. In January, 1996, Sunbird filed suit to recover monies from Burt.

¶9 In January, 1997, the State filed an Information charging Burt with five counts of felony theft. The first four counts alleged that Burt stole more than a quarter million dollars from Sunbird. The fifth count alleged that Burt stole $840 from another company, Simpson Honda.

¶10 In October, 1998 Burt filed a motion to dismiss for lack of speedy trial. The District Court held a hearing in October, 1998 and denied Burt's motion. Burt received a jury trial in October, 1998 and was convicted on all five counts. In December, 1998 the District Court sentenced Burt to ten years prison, with five years suspended, on Count one, and to four consecutive terms of ten years, each one of them suspended, on Counts two through five, resulting in a total sentence of fifty years prison with forty-five years suspended.

Discussion

¶11 1. Whether the District Court erred in concluding that the preindictment delay was not a violation of due process.

¶12 Burt urges that the delay between the time when the State could have filed charges

and the time when the State filed the Information (hereafter, the preindictment delay) violated due process. Burt argues that the State could have charged her in January, 1996 but intentionally delayed charging her and directed private citizens to investigate her. Burt argues that the State in essence used unfettered civil discovery to investigate her criminal case and that her cooperation in civil discovery "nailed shut her criminal coffin." Burt argues that by waiting to file charges, the State avoided triggering her right to a speedy trial. Burt contends further that she suffered actual prejudice in the effect of the preindictment delay on her "health and emotions" and the "hurricane effect that civil discovery and investigation had on [her] subsequent criminal case."

¶13 The State responds that the District Court did not err in finding that Burt was not actually prejudiced by the preindictment delay. The State argues that the only evidence of prejudice was testimony by Burt's husband that Burt's state of mind had deteriorated and that she was depressed and anxious. The State asserts that anxiety by itself does not constitute actual prejudice for purposes of due process. The State notes that Burt does not claim that her defense was impaired by the unavailability or death of any critical witness. The State also argues that the preindictment delay was necessary for the State to investigate "Burt's deceptions more fully." The State argues further that although the prosecution apparently obtained some investigative materials from the civil action brought against Burt, charges were filed against Burt only after an independent audit was performed.

¶14 This Court has previously addressed the due process implications of preindictment delay. In State v. Curtis (1990), 241 Mont. 288, 297, 787 P.2d 306, 311, we concluded that "the issue of prejudice is a question of fact." We recognized that the State must have "a reasonable time to investigate the crime," *Curtis*, 241 Mont. at 297, 787 P.2d at 312, and that premature indictments could "increase the likelihood of unwarranted charges being filed" or "impair investigations by causing sources of information to dry up and by alerting other potential defendants of the possibility of indictment." *Curtis*, 241 Mont. at 298, 787 P.2d at 312 (citation omitted).

¶15 Further, in State v. Taylor, 1998 MT 121, 289 Mont. 63, 960 P.2d 773, we concluded that whether preindictment delay results in a violation of a defendant's due process rights requires a two-step analysis:

> First, the defendant has the burden to show that he has suffered actual and substantial prejudice from the delay. Then, if he has shown sufficient prejudice, we

must weigh the reasons for the delay offered by the State, as well as the length of the delay, to determine whether the defendant's rights have been denied. Throughout our analysis, we should be guided by the principle that a pre-indictment delay will lead to a violation of a defendant's due process rights if it can be said that requiring the defendant to stand trial "violates those fundamental conceptions of justice which lie at the base of our civil and political institutions and which define the community's sense of fair play and decency."

*Taylor, ¶ 20 (citations omitted).*

¶16 In the present case, we hold that the District Court correctly determined that Burt was not prejudiced by the preindictment delay. We decline to conclude that a defendant's anxiety during the preindictment period, without more, constitutes actual prejudice for purposes of establishing a due process violation. *Compare* State v. Mouser (Alaska Ct. App. 1991), 806 P.2d 330, 337, n.3 (concluding that "[b]ecause anxiety, no matter how real, will not, in itself, impair the accused in defending against a charge, it does not qualify as prejudice in the due process context"). Burt has cited no authorities in support of her claim that the anxiety and stress that she experienced as a result of the asserted delay amounted to "actual and substantial prejudice." *Taylor*, ¶ 20. Nor has Burt shown that the preindictment delay resulted in a loss of witnesses or evidence or that requiring her to stand trial "violate[d ] those fundamental conceptions of justice which lie at the base of our civil and political institutions and which define the community's sense of fair play and decency."

*Taylor*, ¶ 20 (citations omitted).

¶17 Burt also claims that the preindictment delay violated her right to privacy. We conclude that Burt has failed to preserve this issue for our review. The State contends and Burt does not dispute that she failed to raise this issue below. The rule is well established that we do not address issues that have not been preserved for review. *See* Unified Industries, Inc. v. Easeley, 1998 MT 145, ¶ 15, 289 Mont. 255, ¶ 15, 961 P.2d 100, ¶ 15.

¶18 2. Whether the District Court erred in denying Burt's motion to dismiss for lack of speedy trial.

¶19 Burt argues that her right to speedy trial has been violated. Without citation to any authority, Burt contends that she became an accused in January, 1996 when a civil

complaint was filed against her and that the filing by "State agents" was tantamount to filing by the prosecution. Burt argues that Deputy County Attorney Marty Lambert directed two private citizens, Mecklenburg and Jim McLean (McLean) to investigate her alleged crimes and that those citizens were therefore agents of the State. The State responds that the District Court correctly concluded that the filing of Sunbird's civil complaint does not mark the time from which a speedy trial analysis should be made.

¶20 We note that Burt also claims that "[t]he seizure of Mrs. Burt and then papers from her car in early January is an 'arrest' for purposes of speedy trial calculations." Burt fails to indicate the *year* in which this alleged "seizure" occurred. She also fails to cite to anything in the record that would suggest a "seizure" of her person. Regarding her papers, in her statement of facts Burt cites only to testimony by her husband that police had removed papers from Burt's car when it was found in Jefferson County and that the police returned some of the papers. Burt does not identify the papers, nor does she argue their importance to her defense. On this scant record, we conclude that Burt's claim is without merit.

¶21 The District Court found that Mecklenburg and McLean were not agents of the State but rather that they met with the County Attorney to request prosecution of Burt and that the County Attorney told them that he would not assist them in their civil action. Further, the District Court found that the County Attorney informed Mecklenburg and McLean that he would not file a criminal action as a collection action and that he did "expect cooperation . . . in any criminal investigation and prosecution by his office."

¶22 We conclude that Burt has failed to identify anything in the record that would support her claim that Mecklenburg and McLean acted as agents of the State. We further conclude that her contention that calculation of her right to speedy trial should begin in January, 1996 is wholly without merit.

¶23 Burt argues, however, that even if her right to speedy trial did not begin in January, 1996, her right to speedy trial has nonetheless been violated. Burt argues that if speedy trial calculations begin from the filing of the Information, more than 275 days of delay are attributable to the State. Burt argues that the State therefore has the burden of showing that Burt was not prejudiced by the delay between the filing of criminal charges against her and the start of her trial. Further, Burt appears to argue that "nearly all of the delay should be assessed against the state because throughout the case the prosecution denied access to documents necessary to Burt's defense." Burt argues that the delay resulting from her counsel's withdrawal for medical reasons should be charged to the State. Finally, Burt

contends that she timely asserted her right to speedy trial, that she suffered prejudice because of her "excessive" anxiety, and that her defense has been "impaired" as a result of the delay. The State responds that the District Court correctly concluded under this Court's decision in City of Billings v. Bruce, 1998 MT 186, 290 Mont. 148, 965 P.2d 866, that Burt's right to speedy trial was not violated.

¶24 The District Court made the following undisputed pertinent findings. The State filed the Information in January, 1997; Burt was arraigned, booked and released on bail on the same day. The case was originally set for trial in August, 1997; however, Burt moved for a continuance for medical reasons and the trial was reset for December, 1997. In November, 1997 Burt entered guilty pleas to the charges against her and sentencing was set for January, 1998. In January, 1998 Burt moved to continue the sentencing date and to withdraw her guilty pleas. The District Court granted her motions and set the case for pretrial conference in March, 1998. On March 20, 1998 the District Court set the case for trial in April, 1998; however, on March 27, 1998 Burt's attorney moved to withdraw and was replaced by new counsel in April, 1998. By agreement of counsel, the District Court reset the trial as a trial to the bench on July 13, 1998. On July 13, 1998 Burt moved to withdraw her consent for waiver of jury trial, requested substitutions of both her defense counsel and the Honorable Judge Olson, and requested a change in venue. The following day, the District Court denied Burt's motions for substitution of judge and change of venue and granted Burt's motions to substitute counsel and to withdraw her waiver of jury trial. At a pretrial conference held later in July, 1998, Burt's counsel requested that the case be set over for a pretrial conference in September, 1998. At the September, 1998 pretrial conference the District Court set the case for trial by jury on October 26, 1998. On October 2, 1998 Burt filed a motion to dismiss for lack of speedy trial.

¶25 In its order denying Burt's motion to dismiss for lack of speedy trial, the District Court determined that the State is responsible for the "institutional delay from January 30 to August 26, 1997 of 208 days." The District Court further concluded that the remaining time between August, 1997 and the trial in October, 1998 was delay "attributable directly to defendant's requests for continuances." The District Court determined that because the delay attributable to the State is less than 275 days, "the burden remains on the defendant to demonstrate prejudice."

¶26 The District Court found that although Burt alleged stress and anxiety from the delay, "the majority of the delay was of her own making." Further, the District Court found that although Burt alleged the possible loss of exculpatory evidence, she made no showing that

any witnesses or evidence had been lost. Concluding that Burt had not established prejudice as a result of the delay, the District Court denied her motion to dismiss for lack of speedy trial.

¶27 Whether a defendant has been denied her right to speedy trial is a question of constitutional law. *See* State v. Small (1996), 279 Mont. 113, 116, 926 P.2d 1376, 1378 (citations omitted). Since 1972, this Court has followed the general guidelines set forth in Barker v. Wingo (1972), 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101, in evaluating claims that a defendant was denied her right to speedy trial under Article II, Section 24 of the Montana Constitution and the Sixth Amendment of the United States Constitution. *See, e.g.*, State v. Sanders (1973), 163 Mont. 209, 213, 516 P.2d 372, 375. In City of Billings v. Bruce, 1998 MT 186, 290 Mont. 148, 965 P.2d 866, we set forth a new method for application of the speedy trial factors in *Barker*.

¶28 Applying *Bruce*, we agree that the length of delay in the present case triggers a speedy trial analysis, as more than 200 days elapsed between Burt's arrest and her trial. *See Bruce*, ¶ 55 (concluding 200 days of delay triggers speedy trial analysis). We agree with the District Court that the State is responsible for the institutional delay from January 30 to August 26, 1997 of 208 days. *Compare* State v. Puzio (1979), 182 Mont. 163, 167, 595 P.2d 1163, 1165 (concluding institutional delay is chargeable to the State). We further agree with the District Court that Burt is responsible for the delay that resulted thereafter. Burt makes no showing how the prosecution's alleged denial of documents contributed to the asserted delay in her trial. Nor does she claim that the State's denial of documents was the basis for any of her motions to continue trial. In the absence of a nexus between the State's alleged discovery misconduct and the delay in Burt's trial, we conclude that Burt's argument is without merit. Nor do we find persuasive Burt's contention that the delay resulting from the withdrawal of her counsel should be charged to the State. The record establishes that Burt's counsel did not withdraw solely for medical reasons. In his motion to withdraw, Burt's counsel stated that "[t]his motion is made for medical reasons in which counsel requires relief from further representation, for the reason that there is deterioration in the attorney-client relationship and for financial reasons." We conclude that the delay resulting from the withdrawal of Burt's counsel is attributable to Burt. *Compare* State v. Dess (1979), 184 Mont. 116, 123, 602 P.2d 142, 146 (where court concluded, after appellant's counsel moved for continuance and requested that new attorney appointed to case have at least a month to prepare, that "seven weeks of the delay followed appellant's motion for continuance and must be attributed to appellant"). Further, even assuming *arguendo* that the delay is attributable to the State, the delay did not prejudice Burt but

rather enabled her to have counsel at trial. Because the delay attributable to the State is less than 275 days, Burt has the burden of showing prejudice from the delay in her trial. *See Bruce*, ¶ 56 (concluding "when it has been demonstrated that 275 days of delay is [sic] attributable to the State, the burden should shift to the State to demonstrate that the defendant has not been prejudiced by the delay").

¶29 As Burt asserted her right to speedy trial before her trial, she made a timely assertion of that right. *See Bruce*, ¶ 57 (concluding defendant must assert right to speedy trial before commencement of trial).

¶30 Finally, we consider whether Burt has established that she was prejudiced by the delay in her trial. Burt argues that she was severely prejudiced because of the anxiety she experienced during the delay in her trial. We conclude that Burt has not shown that her pretrial stress and anxiety prejudiced her. Burt was not incarcerated. Burt has not shown that she suffered excessive stress as a result of the delay in her trial and she has made no showing that her "economic hardship," her "stigma" as a result of being charged with a crime for the first time, and her recourse to the services of a psychiatrist were consequences of the pretrial delay.

¶31 Burt appears to argue that the delay in her trial prejudiced her defense. In lieu of legal argument in support of this position, Burt refers this Court to her preindictment delay claims. For the reasons previously discussed, we conclude that her argument is without merit. Again, Mecklenburg and McLean were not agents of the State. Nor has Burt shown that any witnesses or evidence were lost as a result of the delay in her trial.

¶32 We hold that Burt's right to speedy trial was not denied.

¶33 The judgment and orders of the District Court are affirmed.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ TERRY N. TRIEWEILER

/S/ JAMES C. NELSON

/S/ WILLIAM E. HUNT, SR.

/S/ JIM REGNIER