No. 04-605

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 143N

IN RE THE PARENTING OF ADAM STRASH and
NATHAN STRASH, f/k/a ADAM BURNSIDE
and NATHAN BURNSIDE, Minor Children

WILLIAM A. STRASH,

       Petitioner and Appellant,

    v.

REXANNE WIEFRICH, f/k/a REXANNE VIERNUM,
REXANNE STRASH, REXANNE BURNSIDE,
REXANNE CLARK and REXANNE KISSIAR,

       Respondent and Respondent.

APPEAL FROM:    The District Court of the Eleventh Judicial District,
                In and For the County of Flathead, Cause No. DR 2000-67(C)
                Honorable Stewart E. Stadler, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

              William A. Strash, pro se, Kalispell, Montana

       For Respondent:

              Tiffany B. Lonnevik, Lonnevik Law Firm, Kalispell, Montana

                        Submitted on Briefs: March 16, 2005

                              Decided: June 7, 2005

Filed:

            _____
                          Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1    Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent. It shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number, and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2    William Strash (Strash) appeals from the District Court's refusal to grant him child support, its decision to issue a preliminary injunction temporarily relieving his ex-wife, Rexanne Wieferich, from paying child support, and its decision not to award attorney fees. We affirm. We also deny Wieferich's motion for attorney fees.

¶3    We restate the issues that Strash raises as follows:

¶4    1. Did the District Court have jurisdiction over parenting rights?

¶5    2. Did the District Court have jurisdiction over child support payments?

¶6    3. Does the Full Faith and Credit Clause bar modifications of the Washington order?

¶7    4. Does laches bar Wieferich's recovery of particular late child support payments?

¶8    5. Does res judicata bar Strash's claim for particular late child support payments?

¶9    6. Did the District Court abuse its discretion in determining past child support payments including medical costs?

¶10    7. Did the District Court abuse its discretion by issuing a preliminary injunction?

¶11    8. Did the District Court abuse its discretion in denying attorney fees?

¶12    Wieferich raises a single issue:

2

¶13     9. Should this Court grant Wieferich attorney fees on appeal?

**BACKGROUND**

¶14     Strash and Wieferich had two boys together. Adam Strash is almost twenty years old, and Nathan Strash will be eighteen years old this November. Strash and Wieferich dissolved their marriage in 1990 in the State of Washington. That decree ordered Strash to pay child support of $442 per month and to pay the cost of all medical bills and health insurance for the boys. Wieferich collected public assistance for five months over the next five years. The Washington court changed Strash's obligations twice in 1995, but Wieferich kept a journal of all expenses and payments. She made detailed spreadsheets itemizing the costs and payments. Based on those orders and the resulting obligations, but subtracting the child support Strash paid and the amount of public assistance Wieferich received, Wieferich believes Strash owes her $7300 as of October 1996.

¶15     In October 1996, the parents had agreed to a Modification of Parenting Plan under which Strash would have custody of Adam and Nathan, neither party would pay any child support, Strash would pay for health insurance, and the parents would split the medical expenses. Two months later, while Strash was in Kalispell, Montana, for his mother's funeral, Wieferich visited Adam and Nathan in Washington for Christmas visitation. Believing the children were frightened to return to Strash and his wife, Wieferich invoked a provision of that parenting plan under which "[i]t is agreed that the parties' minor children may, with honest and sincere reasons, be allowed to change residency back to the mother." Wieferich took Adam and Nathan from Washington to her home in Illinois.

3

¶16 Adam and Nathan moved in with Wieferich in the same small town in which Wieferich had been living since 1994. In February 1997, soon after Wieferich left with the children, Strash sent C.O.D. boxes to Wieferich. Marked "Christmas items," the boxes contained broken toys, ripped shoes, and rocks. The parents never returned to court for a determination of child support, and Adam and Nathan had no meaningful contact with Strash during this time.

¶17 Between 1996 and 2001, the parties communicated only once, when Wieferich sent Strash a letter in 1999. At some point, Strash moved to Kalispell. In November 2001, the Child Support Enforcement Division (CSED) of the Montana Department of Public Health and Human Services sent him a letter notifying him that CSED intended to enforce his child support obligation for Adam and Nathan. He quickly discovered that Wieferich, Adam, and Nathan had been living in Somers, Montana. Three days later, Strash petitioned the District Court to accept emergency jurisdiction and to adopt his proposed interim parenting plan. In March 2002, CSED decided that Strash should pay $33 per month per child, for $66 per month total, plus back payments for October 2001 through January 2002.

¶18 In October 2002, the District Court adopted a new parenting plan and continued the $33 per month CSED-mandated child support payments. The District Court specifically reserved the parties' right to request determination or modification of medical support.

¶19 Adam moved in with Strash in February 2003, and Nathan soon followed. By August 2003, neither party owed the other for Adam's child support—apparently because he was no longer a child according to § 40-5-201(2), MCA. CSED ordered Wieferich to pay $339 per

4

month in child support to support Nathan. In November 2003, it issued a Proposed Temporary Order Financial and Medical Support Order and allowed the parties twenty days during which to file a Motion to Review the Proposed Order. Because neither party filed such an order, in December 2003, CSED issued a Temporary Notice and Order Concerning Support. Wieferich applied for a preliminary injunction to relieve her from having to pay Strash while Strash owed her so much in back child support, back health insurance costs, and back medical support. The District Court granted the application the penultimate day of December 2003, held a hearing in February 2004, and issued its opinion in May 2004.

¶20 In the District Court's Findings of Fact, Conclusions of Law, and Order filed May 2004, the District Court continued the CSED order. The District Court concluded that Wieferich will owe Strash a total of $11,187 to support Nathan from September 2003 through May 2006, when he will graduate. Further, the District Court concluded that an exact determination of past child support and other arrears that Strash owed Wieferich was impossible, but it substantially exceeded $11,187. The District Court offset the two debts against each other, so neither parent owed the other for back or future child support of Adam and Nathan, and Strash would owe no past attorney fees or interest. The District Court denied both parties' requests for attorney fees.

¶21 At one time, Strash had retained an attorney, Peter F. Carroll, but Strash has since decided to pursue this matter pro se. Both Strash and Carroll filed notices of appeal under Rule 4(c), M.R.App.P., appealing from the May 2004 Findings of Fact, Conclusions of Law,

5

and Order.  That order discusses only child support.  Nowhere does it discuss parental rights.

## STANDARDS OF REVIEW

¶22    We review decisions whether district courts have jurisdiction to determine whether the district court was correct.  *Burchett v. Mastec N. Am., Inc.*, 2004 MT 177, ¶ 9, 322 Mont. 93, ¶ 9, 93 P.3d 1247, ¶ 9.   We review a district court's allocation of child support to determine whether it abused its discretion.  *In re Marriage of Noble*,  2005 MT 113, ¶ 12, 327 Mont. 95, ¶ 12, ___ P.3d ___, ¶ 12.  We review a district court's award of attorney fees to determine whether the district court abused its discretion.  *Crone v. Crone*, 2003 MT 238, ¶ 17, 317 Mont. 256, ¶ 17, 77 P.3d 167, ¶ 17.

¶23    For Strash's laches claim, this Court has never adopted a standard of review by which to assess an appeal from an application of laches.  We agree with the standards the Ninth Circuit Court of Appeals has adopted in reviewing summary judgment determinations on laches claims.

> We also review de novo whether laches is a valid defense to the particular cause of action. However, the district court's application of the laches factors is entitled to deference, not to be reviewed de novo.

*Grupo Gigante SA de CV v. Dallo & Co., Inc.* (9th Cir. 2004), 391 F.3d 1088, 1101 (quoting *Jarrow Formulas, Inc. v. Nutrition Now, Inc.* (9th Cir. 2002), 304 F.3d 829, 833-34 (citations omitted)).  The Ninth Circuit has not identified the appropriate amount of deference, and we refuse to do so, also.  As explained below and consistent with *Grupo Gigante SA de CV*, "[b]ecause the district court neither committed clear error nor abused its discretion in

6

applying the laches factors to the present case, there is no reason to resolve" which of those two standards is appropriate. 391 F.3d at 1101.

## DISCUSSION

### I. Jurisdiction of Parenting Rights

¶24 Citing § 40-7-204(4), MCA, Strash argues that the District Court lacked subject matter jurisdiction over the child custody case because the District Court failed to communicate with the Washington court.

¶25 Rule 4(c), M.R.App.P., provides that, for all appeals, "[t]he notice of appeal shall . . . designate the judgment, order or part thereof appealed from." This Court will address appeals only from orders designated in the notice of appeal or "intermediate orders or decisions properly excepted or objected to which involve the merits or necessarily affect the [final] judgment . . . ." *Glacier Tennis Club at the Summit, LLC v. Treweek Const. Co., Inc.*, 2004 MT 70, ¶ 31, 320 Mont. 351, ¶ 31, 87 P.3d 431, ¶ 31 (quotation omitted) (citation omitted). The notices of appeal in the present case refer only to the May 2004 Findings of Fact, Conclusions of Law, and Order. Since the District Court order does not address child custody issues, we will not address whether the District Court had jurisdiction over child custody issues.

### II. Jurisdiction of Child Support

¶26 Strash asserts that the October 1996 Washington court order was a valid foreign judgment, so the Montana district court had no jurisdiction to consider back child support under that order. As Wieferich points out, for his statutory argument, Strash cites only the

7

Uniform Child Custody Jurisdiction and Enforcement Act (the UCCJEA) statutes and cases to show that the District Court lacked jurisdiction. However, the UCCJEA, §§ 40-7-101 to 40-7-317, MCA, only covers child *custody* actions. The Uniform Interstate Family Support Act (the UIFSA), §§ 40-5-101 to 40-5-924, MCA, covers child support. Strash has not cited the UIFSA or any other relevant authority, so this Court will not consider this argument. *See Sellner v. State*, 2004 MT 205, ¶ 51, 322 Mont. 310, ¶ 51, 95 P.3d 708, ¶ 51; Rule 23(a)(4), M.R.App.P. (requiring appellants to cite in their briefs the authorities upon which they relied).

### III. Full Faith and Credit

¶27 Strash argues that the Full Faith and Credit Clause of the United States Constitution prohibits a Montana district court from modifying the Washington child support order. This Court addresses subject-matter-jurisdictional claims because "a judgment entered by a court lacking subject matter jurisdiction is subject to attack at any time." *Harland v. Anderson Ranch Co.*, 2004 MT 132, ¶ 31, 321 Mont. 338, ¶ 31, 92 P.3d 1160, ¶ 31. However, issues arising under the Full Faith and Credit Clause are not questions of jurisdiction but questions whether res judicata applies. *See Durfee v. Duke* (1963), 375 U.S. 106, 109, 84 S.Ct. 242, 244, 11 L.Ed.2d 186, 190 ("Full faith and credit thus generally requires every State to give to a judgment at least the *res judicata* effect which the judgment would be accorded in the State which rendered it."). Strash did not raise this issue in the court below. Since we do not address non-subject-matter-jurisdictional issues that parties have not preserved for

8

review, we do not address this issue. *State v. Burt*, 2000 MT 115, ¶ 17, 299 Mont. 412, ¶ 17, 3 P.3d 597, ¶ 17; *see Harland*, ¶ 31.

## IV. Laches

¶28 Citing *In re Marriage of Deist*, 2003 MT 263, 317 Mont. 427, 77 P.3d 525, Strash asserts the laches defense to Wieferich's child support, medical support, and health insurance claims. In *Deist*, the Decree of Dissolution required the father to pay 92 percent of the daughters' medical costs. The mother sought reimbursement for a six-year-old medical expense. This Court concluded that laches barred the claim because the mother had not notified the father of the costs during all those six years. To rebut this, Wieferich cites *Schmitz v. Engstrom*, 2000 MT 275, ¶ 14, 302 Mont. 121, ¶ 14, 13 P.3d 38, ¶ 14, for the proposition that laches never applies to a child support order.

¶29 Whether laches can affect one's child support arrears, including medical support and health insurance, is a question of law. *Deist* seems erroneously to have applied laches to bar a party from paying his child support arrears. Without commenting on the viability of *Deist*, *Deist* is inapplicable because the operable facts in that case differ substantially from the operable facts in this case. In *Deist*, the parents had communicated over other medical costs during those six years. In contrast, the parents in the present case spoke only once during the five years while the medical bills accrued and the father knew from the court orders that he had a support obligation.

¶30 A parent cannot escape his obligations simply by failing to communicate. The statute of limitations sufficiently defines the outer limits of that responsibility when the parents are not communicating. Section 27-2-201(3), (4), MCA. The District Court did not err in concluding that Strash's support obligations were not barred by laches.

## V. Res Judicata

¶31 Strash argues that res judicata deprives the District Court of jurisdiction to change both the child support and medical support arrears. He claims that the District Court October 2002 Findings of Fact, Conclusions of Law, and Order and the November 2003 CSED Proposed Temporary Order were prior final orders, so res judicata precluded the District Court from addressing the past child-support arrears. Neither of these orders addressed past child support obligations from December 1996 to October 2001, so res judicata does not apply.

## VI. Child Support Determination

¶32 Strash argues that the District Court's determination that he owed Wieferich "substantially more than the $11,187 which has been calculated as [her] obligation" is clearly erroneous. A finding of fact is clearly erroneous if substantial evidence does not support it, if the district court misapprehended the effect of that evidence, or if a review of the record leaves this Court with the definite and firm conviction that the district court made a mistake. *In re T.R.*, 2004 MT 388, ¶ 14, 325 Mont. 125, ¶ 14, 104 P.3d 439, ¶ 14.

¶33 Strash asserts that substantial evidence does not support the District Court's decision because it failed to show how it determined this amount and it failed to determine an exact amount. He cites *Lee v. Lee*, 2000 MT 67, ¶ 20, 299 Mont. 78, ¶ 20, 996 P.2d 389, ¶ 20: "Substantial evidence is the amount of relevant evidence which a reasonable mind might accept as adequate to support a conclusion." We assume he is implying that a reasonable mind could not have reached this decision based on the evidence.

¶34 Strash provided no evidence that he had paid any child support from 1997 to 2001 or appreciable amount of medical support from 1990 to 2001. Wieferich produced reams of invoices and bills, made detailed spreadsheets, and testified about many individual instances of unpaid medical support. The District Court specifically exercised its powers of equity to equate the debts and offset them against one another. These reams of documentation and spreadsheets combined with Wieferich's testimony provide substantial evidence by which the District Court could come to its conclusion that Strash owed substantially more than $11,187. A reasonable mind might have accepted this evidence as adequate. The result was not clearly erroneous, so we affirm.

¶35 Strash also disputes the District Court's award of child support to Wieferich between January 1997 and March 2002. At that time, the October 1996 Modification of Parenting Plan did not order either spouse to pay child support. Wieferich admits that § 40-4-208(1), MCA, generally prohibits retroactive modification of a child support obligation, but proffers that this Court has carved out an equitable exception when the parents mutually agree to change the residency of the children. *In re Marriage of Ryan* (1989), 239 Mont. 100, 102-03, 778 P.2d 1389, 1390. Strash asserts that the change of residency was not by agreement; rather, Wieferich "absconded" with the children while he was in Kalispell for his mother's funeral.

¶36 By sending boxes to Wieferich, Strash verified that he knew where she, Adam, and Nathan lived. Nevertheless, he never attempted to enforce his parenting rights or even to participate in Adam's and Nathan's lives. Strash's knowledge of Adam and Nathan's

whereabouts but refusal to contact them indicates a voluntary abdication of his custodial rights and a tacit agreement to the change of custody. This acquiescence suffices for the mutual consent to changed residency that the *Ryan* exception requires. Allowing Strash to escape five years of child support payments while the children lived with Wieferich would be unconscionable.

## VII. Preliminary Injunction

¶37 Strash contends the District Court granted a preliminary injunction without sufficient notice and to relieve Wieferich of paying money—a rare objective for an injunction. The parties must first present a justiciable controversy before a court can consider the merits of an issue, and this Court can question the justiciability of any controversy *sua sponte*. *Dennis v. Brown*, 2005 MT 85, ¶ 8, 326 Mont. 422, ¶ 8, 110 P.3d 17, ¶ 8. Given that the Court ultimately held her responsible for those months of child support, the issue is now moot.

## VIII. Strash's Attorney Fees

¶38 Strash requests attorney fees claiming Wieferich has lied about child support payments and medical payments. Strash cites *Braach v. Graybeal*, 1999 MT 234, ¶ 9, 296 Mont. 138, ¶ 9, 988 P.2d 761, ¶ 9, for authority to grant attorney fees to a party who "has been forced to defend against a wholly frivolous or malicious action." Because we have held for Wieferich, the case was neither wholly frivolous nor malicious. The District Court did not abuse its discretion in denying Strash his attorney fees.

13

**IX. Attorney Fees for Wieferich to Respond to Strash's Appeal**

¶39     Similarly, Wieferich requests attorney fees. She cites Rule 32, M.R.App.P.:

> If the supreme court is satisfied from the record and the presentation of the appeal in a civil case that the same was taken without substantial or reasonable grounds, such damages may be assessed on determination thereof as under the circumstances are deemed proper.

This Court, in *Snow v. Snow*, 2002 MT 143, ¶ 31, 310 Mont. 260, ¶ 31, 49 P.3d 610, ¶ 31, declared that we would award attorney fees if the appeal was "entirely unfounded and intended to cause delay or . . . counsel's actions otherwise constitute an abuse of the judicial system."

¶40     Wieferich claims that Strash's brief "mis-cites authority, lacks analysis, and otherwise impedes an intelligent response thereto, just as the Court found in *Snow*." Strash's actions here are not so egregious as Snow's. Of the six issues Eric Snow raised on appeal, he discussed only one. For each of the remaining issues, he merely stated that "[t]his issue is presented at face value to the court without argument." We concluded that Snow had failed to properly present evidence or authority that the District Court erred in refusing to modify visitation, and he filed briefs on appeal that neither complied with the Montana Rules of Appellate Procedure nor prompted any intelligent response. *Snow*, ¶ 32.

¶41     On the contrary, Strash's arguments, while unorthodox and meandering at times, retained sufficient cogency and coherence to allow an intelligent response. He cites authority for his claims and organizes his thoughts, generally, into headings and subheadings.

We cannot say that his appeal was entirely unfounded, intended to cause delay, or that it abused the judicial system. We refuse to grant Wieferich attorney fees.

¶42    Affirmed.


                                        /S/ W. WILLIAM LEAPHART


We Concur:

/S/ KARLA M. GRAY
/S/ JOHN WARNER
/S/ JAMES C. NELSON
/S/ JIM RICE